We're now ready to hear 21-9005, Olsen v. Commissioner. Mr. Jones, are you ready to proceed? Yes. Please report. Good morning, Your Honors. I appreciate your time and spending a little bit on a tax case, hopefully to keep you awake during the proceedings today. We're here to talk about, basically, an activity. An activity is reported on someone's tax return. Could I interrupt to start with this? Of course. The tax court made a number of fact findings. I didn't see your brief challenging any of the fact findings. Are we starting from the facts that were found by the tax court? I'd say that's fair. I think, again, the primary error that we find with the tax court's decision is that it failed to consider, in the analysis of profit motive, the tax benefits that are available in that calculation. I think introducing that concept, I was getting to that by saying you're reporting an activity, and that activity has to be defined in some way. And the idea here is that Mr. Olson, through an entity he formed, purchased some solar lenses, and it was stipulated, as a factual matter, that these lenses can be used in a system to produce electricity. And so just by that stipulation of fact, we are talking about an activity that should be analyzed under a tax benefit scenario because they are available. Producing electricity is something that will generate the investment credit, and using the solar energy property in an activity would qualify for that. Well, of course, the commissioner challenges that. I mean, what you said I think is factually unassailable, but the tax court went further, and Dr. Mancini went further and said, well, there is no way that this setup, even within five years, can generate a commercially sufficient amount of energy. So if there is a de minimis, a jolt of energy that can never be connected to a transmission grid, that can never do anything functionally, then why isn't that, for purposes that I assume we're talking about, the second issue, the placement of the property in service, why isn't that factual finding by the tax court, notwithstanding that stipulation, why doesn't that tie our hands on the second issue? Sure, great question. The answer to that is found in the Cooper case. The tax court agreed with, didn't take issue with, and said to Cooper, and it says that, look, if you've got a component piece that can function in a system to produce electricity or is a component piece to accomplishing that measure, the Cooper case specifically says that it doesn't have to function. Well, and I don't mean to monopolize time, but let me ask you what I think I remember about Cooper, and I could be wrong about it, but I thought that the holding in Cooper was that those items, the property, the solar property, had a useful life that would go beyond the rental period. And so once the rental period for those solar devices in Cooper had expired, that not only would the owner have recouped the rental value, those rental payments, and the rental payments in this case were zero, that there would still be enough useful life in that property where it still could have been sold or installed in some transmission grid. And that seems to be a quite different situation from Cooper, as in our case, where there's no evidence in the record about the useful life of these solar lenses and that the evidence that it would take 23.3 years, if Neldon Johnson was able to generate a billion dollars in sales and was able to, you know, actually start these $100, $150 a month payments for each solar lens, that it would have taken 24 years just to recoup the, you know, the payments that the couple, that the Olsons had paid, and that there's no evidence in the record that they even had a useful life beyond 23.3 years. Why is that a significant difference with Cooper? Well, first of all, I would say that the property issue is a solar lens. So, Neldon Johnson and Raw Power III and his operation, that was the entity that these lenses were leased to. Now, the useful life, that is going to, so for tax purposes, that is going to be measured by whatever the code dictates. Okay, and there are numerous examples that I could pull out about, you know, whether or not it has a useful life that might go beyond what, you know, the modified accelerated recovery system or makers in the code says that it should go, or it might go less than that, right? The point being, though, is that this lens is tangible property, and the useful life for depreciation purposes and tax purposes is not measured by what it actually accomplishes. Rather, it's what the code says that you're supposed to depreciate it over. And I don't think there is a dispute at all, factually, that this tangible property was purchased, and that under the makers, you know, maker system under the code, it's got a, quote, useful life by which you are required to depreciate it. In fact, you're not, you know, you're not allowed to change that unless you file an election on your tax return. So, as a matter of law, property that's purchased has a useful life. So, when you're describing it in a way that says, well, what if the lens doesn't go beyond that period of time? It's really irrelevant, frankly, because what we're talking about is, and the tax court calls attention to this and says, is the depreciation allowable? And they use that term allowable. And they basically come up with three reasons why it's not, quote, allowable. And they say, one, there's no profit motive. We say specifically, hey, look, you didn't even consider whether a tax benefit is available in that calculation of profit. Is that available? Now, what exactly is your argument? Now, that goes back to Judge Hartz's question. You know, the tax court found, not that whether there's a profit motive, but they found under the, I forget the name of it, or something like that, the Supreme Court opinion, that not only does there have to be a profit motive, but there has to be a primary motive of profit. And the tax court found that for purposes of the placement in trade or for the profit prong, that there was no primary motivation for profit. And you haven't challenged that. You've argued that, well, they neglected to consider the tax benefits using that Sachs case. But in Sachs, they were talking about that there still would be, you know, post-tax opportunity for profit. Here, if it goes back to this point about the useful life, if the useful life didn't exceed 23.3 months, then they're never, and they were committed to this Neldon Johnson entity, LBJ or LBS or whatever it was. LBT. LBT, sorry. To, you know, to rent to lease to LBT for 23.3 years and that there was no useful life. Unlike Sachs, there would never be any opportunity for profit, even if you were to take into account the tax benefit. So there was never an opportunity to make a dollar of profit. Well, I'm going to take exception with a couple points there. So, for example, the Fox case we cited in our reply brief, it basically says, hey, look, you should even be considering, you know, if something is unprofitable, you should be considering the tax benefits. The refined pool case says the same thing. So, again, if we get to a place where we are profitable, the word primary isn't a legal, you know, it's just are you profit-motivated. That doesn't appear. I mean, that is not in any statute or case as a finding that's right. It's in the Supreme Court opinion, though. The word primary, it's just profit-motivated. Which Supreme Court opinion is that? I can perhaps do a 24-J letter to address that. I may be wrong. I've only ever known that to address are you profit-motivated. And like Fox and refined pool, these recent cases are saying, hey, you don't even need a profit motive if, and the crux of this is if Congress is intending that this activity is incentivized or subsidized by, you know, congressional intent. We're intending to do that. You can get away with a profit motive. All this parsing language and opinions strikes me as irrelevant here. There was nothing there. There was nothing going on. The sole purpose of this was to get a tax deduction. They hadn't done anything. I disagree. Well, the facts are pretty strong. He purchased stock. I mean, this gentleman and others, not just him, there are a whole bunch of taxpayers, they believe in the technology. They believed in the tax benefits. There was no reasonable basis to think that there was anything going on here. And to answer that specific issue, Your Honor, in Hayden versus Commissioner in the Sixth Circuit, Hayden very clearly says it's a subjective test on profit motivated, no matter how unreasonable that might be. And you and I may, you know, I didn't invest in it. I didn't buy a lens, right? You maybe wouldn't have bought a lens. This taxpayer did and testified that he was so confident in it that he also bought stock, went out to the site, did the myriad of things that he did. The judge didn't believe him on whether he went to the site. Isn't that correct? There's no other testimony controverting it. The credibility determination, he also relies on his testimony. I mean, you can read the opinion, but when he says it's not credible, he sure does rely on his testimony a lot, doesn't he? So I don't know how you can rely on it exclusively and then say it's not credible. But we didn't raise credibility. I mean, we're here on the law primarily, right? I do want to reserve some time. I don't know if there are any other questions that I can respond to. You've reserved a little over 20 minutes. Thank you. May it please the Court. Robert Bramman with the Commission for Internal Revenue. I'm confident that the Court understands the government's argument, or perhaps I should say I'm confident that the Court understands the tax court's excellent opinion, which I could not really improve upon in my brief. If I could take a minute to comment on some of my friend's answers. First on the issue of how long were these lenses supposed to last, the answer you gave to Judge Bachrach's question concerned the Internal Revenue Code and maybe some Treasury regulations that say how long you get to depreciate something. If you build a building, you can't depreciate it all in three years because it's expected to last a long time. So the Internal Revenue Code has a set of regulations classifying property and saying how long you get to depreciate it. That's not an issue here. He doesn't get to depreciate it all. As the evidence came into the tax court, and the tax court analyzed what had happened, the issue was how long is the thing likely to last in real life. Once you examine the details of the transaction, you see you can't possibly make any money in less than 23 years unless he's going to show that these lenses are really going to last more than 23 years. You know he was not in it for making rental income. That brings us back to Judge Hart's understanding of the case. There was nothing there. There was no rental. There was no leasing. Let me ask you this. Are there any of the grounds of the tax court for denying the investment credits, et cetera, that depends on the taxpayer's intent? No. You don't think the intent of the taxpayers is totally irrelevant to all those issues? I think it's too... I don't see how it could in any of these issues. What about the profit motive? I thought that was your argument. On the first issue. The first issue really comes in between paths. One was, was there a trade in business? And his belief doesn't factor into that. The second path on the first issue is, was he engaging this thing for a profit? And the taxpayer's belief, I think, would be relevant to that. I thought you had argued on the first prong, putting the property in trade, that I thought you had argued in your brief that for either one of those prongs, there had to be a primary profit motive. But I may be mistaken in interpreting your argument. No, I think you're right. I think you're right. Okay. As I've thought about it more, I've looked more just at what kind of things were there there. There was no solar energy business, really, at all. And the leasing business was hobbled by so many defects that there wasn't really, the tax court thought there wasn't a leasing business there either. But the taxpayer's belief could come into those prongs also, where the facts came closer to there being a real business. So if I'm understanding you, perhaps the taxpayer's intent or belief is relevant on some elements of their claim, but the claims all lose on other grounds, so we don't have to address intent or... I think that's right. I mean, often these cases deal with the taxpayer's belief when they have some kind of business that isn't really expected to make a profit, like breeding horses, which is one of those things that people do because they have enough income to lose in a business. It's just a hobby. And then courts look at, did they have a real belief that they were going to make money breeding horses a few years down the road? But this case is buried under so many adverse facts that the taxpayer, it really doesn't matter whether he believed, what his belief was. To make it clear, so even if he believed it, for each of these theories, for denial, any one of which would be sufficient, but for each of the theories, even if he sincerely believed in this business, this so-called business, he would lose anyway? Yes. Starting with a single leasing transaction per year where the lessee didn't sign the lease and then going on to what the, even if the lease had been signed, what the expected rental income would be over the 23 plus years that were required to go on. Add to that the fact that these were specially grooved sheets of plastic that were going to have to be propped up on towers in the wind and the rain and the sun for more than 23 years. And there's no evidence as to how long they were expected to last. Buried under all those things, even if Mr. Olson sincerely believed that there was a prospect of making a profit, it wouldn't matter. As my friend has acknowledged, there are a number of other investors in this case too, and I have no doubt that they occupy the range of gullible dupes who were financially unsophisticated and just taken advantage of by the promoters and people that knew better and should have known better, but couldn't help themselves from getting into this thing that offered tax benefits right away. Mr. Olson is an attorney at a national law firm with the University of Chicago education. I have my views as to where he falls along that spectrum, but it doesn't matter for most of these cases. What about the argument that he's made, and I think there has been an issue raised by the parties about whether this is in the record, that Mr. Olson purchased a million shares in Ray Power or whatever it was, one of the Neldon Johnson entities. Is there evidence in the record that he purchased a million shares? I don't know that I saw any in the trial transcript or the documents. He said so on brief. I can't say that he didn't, but there's certainly no evidence as to how much he paid for a million shares. And as we know, sometimes you can get a million shares for free if you buy stock in a crypto company at the right time. So it's impossible that he's assigning ascribing weight to that evidence. I want to just point to one other fact that the tax court identified that I unfortunately buried in a footnote that adds to this pile of facts that shows why there was really nothing there. Two years after investing $60,000 in this thing, he wrote an email to one of the promoters saying, I don't really know what we're selling here. People are asking me what we're selling, and I don't really know what it is. And that exchange is revealing because he wasn't asking what we're selling for the purpose of figuring out how the solar power project was going to generate electricity and sell it to the grid. He was asking for the purpose of, well, part of the project was multi-level marketing, and he wanted to know how to bring in more investors and what was the story. What are we telling them about what a solar lens is? One more fact. But what has that fact bear on the issue? So I assume that that is on your first issue, that he didn't have a primary profit motive. Yes, sir. He didn't know. Okay. Yes, sir. Any other questions? Thank you, counsel. Mr. Jones, you have 237. Thank you very much. I want to call attention to basically the three reasons that, again, the case turns on is depreciation allowable or not. The three reasons given by the tax court are stated that there was no profit motive. That basically applies to the activity being treated as a trade or business or as a health or production of income. They're kind of similar. My friend called that twin arguments. And then the last one is basically how they did classify the argument, how the tax court did end up classifying the activity, and that is as a 183 activity or kind of a hobby loss as it's known. I'm reciting this because... Are you talking about the passive investment? No. Hobby loss is 183. It limits the amount of a deduction that can be taken. And the point that I wanted to raise on this 183 is it basically says if you have zero revenue or if you have $10,000 of revenue, your deduction is limited to the amount of revenue taken. Now, the key on this point that doesn't have anything to do with intent, and I want to get to intent because that's where I'm going in response to this, but because you're on a raise, I'll just address it. 183 says that depreciation is still allowable. This is discussed in response to arguments made by the government in the reply brief. If you look at the Treasury 1.46-3D, it says specifically that a personal activity is allowed for depreciation. So, you know, the argument made by the tax court was erroneous for that very reason, right, is that even though they classified it as a 183 activity, depreciation is still allowable, and therefore it was improper for the tax court to deny that tax benefit of the credit as it relates to even classifying it as a 183. If you're going to address intent, you've got 17 seconds. Thank you. Intent, both of those arguments in trade or business and held for production of income are expressly required in the analysis of intent. So those first two arguments that were raised, they wholly depend on intent, and it's a subjective intent, and that is the plain law on that, and so intent matters. I wanted to respond to that specifically. Did the tax court make a fact-finding regarding intent? Well, they... If that was necessary, presumably, the tax court made a finding. They basically said what we've argued against is that he lacked the profit motive, so to the extent that that's implied, that was there a finding of intent? No. Okay. Did you have a question? Is it okay? Yeah. Okay, I just have one question. One issue that you fellows briefed very well but haven't addressed today, and it's on this passive activity. Now, you had argued, and I'll just tell you sort of what I'm thinking about this issue and tell me where I'm wrong. So I think you have acknowledged in your reply brief that rental activity per se is a passive activity. Now, in your opening brief, you made an argument that, well, he had been not only a material participant, but he was the only participant in this rental activity. Your adversary, the commissioner, has responded to that. You've abandoned that argument, I think, and your reply made a different argument in your reply brief for the first time, and that is that there was extraordinary personal services that even though it was a passive activity, it would come within an exception under the Treasury regulation because this was extraordinary personal services. The rental activity was incident to extraordinary personal services. For example, I assume that you're talking about like a college dormitory or something like that, that you provide an extraordinary service through allowing people to stay in a facility or something like that. But that was an argument that was completely different than the argument that you made in your opening brief Haven't you waived the only argument that you made in your opening brief? No, I would... I appreciate you bringing that up. So I would not say we've abandoned that. So first and foremost, let me say that our argument is that in Cooper, for example, there are other cases that talk about just the rental of personal property being a trader business. A trader business is not... That's issue two. I'm sorry? Trader business is issue two. Yes, but if you're a trader business, you materially participate and therefore it's a non-passive... I thought you agreed in your reply brief that material participation in a passive activity does not allow you to depreciate the property because it is a passive activity. There's a different issue there. So passive activity is, again, a limitation. So it's deciding... It's not saying that... You can't depreciate, but you can't depreciate... Well, depreciation is still allowable, right? For a passive gain, and he doesn't have any passive gain. He does not in that tax year. However, that doesn't... So again, it's nuanced, and you have to appreciate this. So we're trying to decide, is the credit available? Is this energy property under Section 48? And the term under Section 48 is, is depreciation allowable, right? And the tax court focuses on this concept that it's not allowable during the year. But the point we're making to your honors, to this court, is even if you go all the way down to sort of the worst-case scenario, to 183, depreciation is still allowable. Under passive activity, it's allowable... Okay, and I'm sorry to take up so much time, but this is interesting, and I hadn't understood this nuance of your argument. So if you get that far, if you win on the first two issues, then you are acknowledging that you would lose on the depreciation deductions, but you would argue that you would win on the energy credit. Well, no. If we win on the first issue, and it's a trader business, because it's a trader business, that's the end of the argument. That means we materially participate, and it's not passive. That was Cooper. Okay. Cooper... Well, I mean, there's an argument about Cooper, whether it's distinguishable, because you had a legitimate third-party transaction. But on that point, it's not distinguishable. Okay. I don't think anyone takes any exception with that. In Cooper, they say the leasing activity of energy property is a trader business, and therefore, it's non-passive. Okay. And I didn't mean to talk over you, but just to make sure that I'm understanding, and that is the only reason I'm taking up so much time. If you lose on your first two issues, and you win on this third issue, this passive activity, you would be losing the depreciation deduction argument, but you would win, in your view, on the disallowance of the energy credit. Is that what you're saying? The taxpayers still get the credit, and the credit might be limited by the past activity, but you have to then find that it's energy property, which I'm at a loss how it's not energy property. I think we take every box. But you're saying that the energy credit could only be taken against... For that year. For active gains that are not passive. Sure, but it gets carried forward under those. You get it. It's allowable. Okay, you just don't get anything that year. Yeah. Which is the only year. We're only talking about 2010. Might be. Or 2010. But there are other taxpayers who are like, this is a test case, so there are other taxpayers. Okay. So you've got to know the answer to that question. All right. Thank you for your indulgence. Thank you for your time. I appreciate that. Thank you, counsel. Case is submitted. Counsel is excused.